IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:16-CV-806-D

CYNTHIA NARRELL BROWN, )
)
Plaintiff, )
)
v. ) **ORDER**
)
WAKE COUNTY GOVERNMENT, and )
JIM HARTMAN, County Manager )
)
Defendants. )

On September 23, 2016, Cynthia Narrell Brown ("Brown" or "plaintiff"), a pro se plaintiff proceeding in forma pauperis [D.E. 1, 3], filed a complaint against the Wake County Government ("Wake County") and County Manager Jim Hartman ("Hartman") (collectively, "defendants") claiming violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII") [D.E. 4]. On December 7, 2016, defendants moved to dismiss Brown's complaint for lack of subject-matter jurisdiction and for failure to state a claim [D.E. 17] and filed a supporting memorandum [D.E. 18]. On December 8, 2016, the court notified Brown about the motion to dismiss, the consequences of failing to respond, and the response deadline [D.E. 19]. The letter was returned as undeliverable [D.E. 20], and Brown never responded. As explained below, the court grants defendants' motion to dismiss for failure to state a claim upon which relief can be granted.

I.

In December 2000, Brown began working as a human services technician for Wake County. Compl. [D.E. 4] 4; [D.E. 17-2] 3. In 2011, Brown filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") against Wake County. Compl. at 3. On

unspecified dates, unspecified persons defamed Brown, disciplined her with "unjust suspensions" and "write-ups," treated her differently than Hispanic coworkers, and denied her educational opportunities granted to others. Id. at 4.[1] On or about September 21, 2015, Brown returned from leave under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601–2654. Id. at 4–5. When Brown returned from FMLA leave, Safa Hamad, "WIC Program Manager," fired Brown "for unacceptable conduct by demonstrating disrespectful treatment toward staff and unsatisfactory job performance for not following work rules." Id. at 5; [D.E. 17-2] 3. Brown "den[ies] both accusations and believe[s]" those reasons were pretextual and that defendants really fired her in retaliation for her 2011 EEOC charge. Compl. 5; [D.E. 17-2] 3.

On March 18, 2016, the EEOC notified Wake County that Brown had filed a charge of discrimination against Wake County and that the EEOC would forward Brown's "perfected charge" when received. [D.E. 17-1]. On April 6, 2016, Brown filed a discrimination charge with the EEOC, claiming retaliatory discharge and discrimination on the basis of color, race, religion, and national origin. [D.E. 17-2] 3. On April 21, 2016, the EEOC notified Wake County about Brown's April 6, 2016 EEOC charge and enclosed a copy of the charge. [D.E. 17-2].

II.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests subject-matter jurisdiction, which is "the court's statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (emphasis omitted); see Holloway v. Pagan River Dockside Seafood, Inc., 669 F.3d 448, 453 (4th Cir. 2012). "[T]he party invoking federal

---

[1] Brown alleges that a "Program Manager" and three "Administrative Supervisor[s]" "discriminated against [her] during the period of [her] employment," but does not connect these four individuals with any specific alleged acts or events. See Compl. at 5.

2

jurisdiction bears the burden of establishing its existence." Steel Co., 523 U.S. at 104; see, e.g., Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). In considering a motion to dismiss for lack of subject-matter jurisdiction, the court may consider evidence outside the pleadings without converting the motion into one for summary judgment. See, e.g., Richmond, Fredericksburg & Potomac R.R. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). However, if a defendant "contend[s] that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based," then "all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982); see Kerns v. United States, 585 F.3d 187, 192–93 (4th Cir. 2009). Thus, "when a defendant asserts that the complaint fails to allege sufficient facts to support subject matter jurisdiction," a court must "assume the truthfulness of the facts alleged" in the complaint and any attached materials. Kerns, 585 F.3d at 193; see Fed. R. Civ. P. 10(c). Here, defendants dispute the factual basis for subject-matter jurisdiction.

A district court has jurisdiction to consider an employee's Title VII claims only to the extent the employee included those claims in a timely EEOC charge. See, e.g., Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009); Webb v. N.C. Dep't of Crime Control & Pub. Safety, Alcohol Law Enf't Div., 658 F. Supp. 2d 700, 707–09 (E.D.N.C. 2009). "Even after a plaintiff has exhausted his administrative remedies, the administrative framework plays a substantial role in focusing the formal litigation it precedes." Chacko v. Patuxent Inst., 429 F.3d 505, 509 (4th Cir. 2005). The EEOC charge's content determines the scope of a plaintiff's right to maintain a Title VII claim in court. See id.; Hentosh v. Old Dominion Univ., 767 F.3d 413, 416 (4th Cir. 2014); Webb, 658 F. Supp. 2d at 707–08. This court lacks jurisdiction over Title VII claims that exceed the scope of the EEOC charge. See, e.g., Balas v. Huntington Ingalls Indus., Inc., 711 F.3d 401, 407–09 (4th Cir.

3

2013); Jones, 551 F.3d at 300; Chacko, 429 F.3d at 509–10.

"Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." Jones, 551 F.3d at 300 (quotation omitted); see Sydnor v. Fairfax Cty., Va., 681 F.3d 591, 594 (4th Cir. 2012); Chacko, 429 F.3d at 509–10. "Thus, factual allegations made in formal litigation must correspond to those set forth in the administrative charge." Bonds v. Leavitt, 629 F.3d 369, 379 (4th Cir. 2011) (quotation omitted). For example, "a claim in formal litigation will generally be barred if the EEOC charge alleges discrimination on one basis, such as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex." Jones, 551 F.3d at 300; see Chacko, 429 F.3d at 509–10. Nonetheless, because laypersons often initiate the EEOC administrative process, courts construe EEOC charges liberally. See Sydnor, 681 F.3d at 594; Chacko, 429 F.3d at 509.

Brown filed an EEOC charge at some time before the EEOC sent Wake County the March 18, 2016 letter, although the EEOC charge stated that it was not a "perfected charge." Defendants concede they do not know any distinction between a perfected EEOC charge and an unperfected EEOC charge. Defendants also concede that Brown filed an EEOC charge, although not a "perfected" charge, before March 18, 2016, which was 179 days after Wake County terminated Brown's employment.

The record does not include what claims Brown included in her unperfected EEOC charge. The April 21, 2016 EEOC charge included Brown's claims for retaliatory discharge and discrimination, but not her hostile work environment claim. Because the record is unclear concerning Brown's unperfected EEOC charge, the court declines to dismiss the complaint for lack of subject-matter jurisdiction based on untimely filing. Thus, the court denies defendants' motion

4

to dismiss for lack of subject-matter jurisdiction.

III.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80, 684 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 347, 352–53 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's allegations must "nudge[ ] [her] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausib[ility]." Iqbal, 556 U.S. at 678–79.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co., 637 F.3d at 448; see Fed. R. Civ. P. 10(c); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005); accord Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (per curiam). A court also may take judicial notice of public records without converting the motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201(d); Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

The standard used to evaluate the sufficiency of a pleading is flexible, "and a pro se

5

complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson, 551 U.S. at 94 (quotation omitted). Erickson, however, does not "undermine [the] requirement that a pleading contain 'more than labels and conclusions.'" Giarratano, 521 F.3d at 304 n.5 (quoting Twombly, 550 U.S. at 555); see Iqbal, 556 U.S. at 677–83; Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. (2012); Nemet Chevrolet Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255–56 (2009); Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009).

Brown claims she was discharged in retaliation for engaging in protected activity in violation of 42 U.S.C. § 2000e-3(a), that the reasons given for her termination were pretextual, and that defendants fired her in September 2015 for filing an EEOC charge in 2011. She also alleges that she "was discriminated against due to [her] Race/Black, Color/Dark-skinned, Religion (Christianity), and national origin/African, in violation of Title VII" by "Defamation of Character[,] unjust suspensions, write-ups, treated differently, [sic] than hispanic co-workers, denied an opportunity to further education while others were given the opportunity[,] . . . forced to work in a hostile work environment" and "fired the day [she] returned from FMLA leave did not provide necessary accommodations for [her] to do [her] job." Compl. at 4. Brown also alleges that defendants created a hostile work environment based on her color, national origin, race, or religion.

A.

Brown named the County Manager Hartman as a defendant. Actions under Title VII may be brought only against "an employer" as that term is defined in 42 U.S.C. § 2000e(b). See 42 U.S.C. § 2000e-2(a); Lissau v. S. Food Serv., Inc., 159 F.3d 177, 180–81 (4th Cir. 1998). Supervisors acting in their individual capacities are not employers under Title VII and are not proper defendants. See, e.g., Lissau, 159 F.3d at 180–81. Thus, Brown has failed to plausibly allege a Title

6

VII claim against Hartman.[2]

B.

To plausibly allege retaliation in violation of Title VII, an employee must allege that: (1) she engaged in activity protected under Title VII; (2) her employer took an adverse employment action against her that a reasonable employee would find materially adverse; and (3) the employee's protected activity was the but-for cause of the employer's retaliation. See DeMasters v. Carilion Clinic, 796 F.3d 409, 416 (4th Cir. 2015); Balas, 711 F.3d at 410; see also Univ. of Texas Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2533 (2013); Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006).

To survive a motion to dismiss, a Title VII plaintiff must plausibly allege a statutory claim, not a prima facie case. See McCleary-Evans v. Md. Dep't of Transp., State Highway Admin., 780 F.3d 582, 585–88 (4th Cir. 2015), cert. denied, 136 S. Ct. 1162 (2016). In relevant part, Title VII's retaliation provision prohibits an employer from discriminating against any individual "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Title VII requires the employee to show "that retaliation was a but-for cause of a challenged adverse employment action." Guessous v.

---

[2] To the extent Brown has sued Hartman in his official capacity as an officer of Wake County, a claim against a public official sued in his official capacity is essentially a claim against the government entity the official represents. See Kentucky v. Graham, 473 U.S. 159, 165–66 (1985); Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 307 n.13 (4th Cir. 2006); Love-Lane v. Martin, 355 F.3d 766, 783 (4th Cir. 2004). Thus, Brown's Title VII claim against Hartman in his official capacity is functionally brought against Wake County. Accordingly, Brown's official-capacity claims against Hartman duplicate the claims against Wake County and are dismissed as duplicative. See, e.g., McDonald v. Suggs, No. 5:07-CV-339-D, 2008 WL 2129860, at *4 (E.D.N.C. May 20, 2008) (unpublished).

7

Fairview Prop. Invs., LLC, 828 F.3d 208, 216–17 (4th Cir. 2016) (quotation omitted); see Nassar, 133 S. Ct. at 2533. Thus, to survive a motion to dismiss an employee must plausibly allege a but-for causal connection between her protected activity and the alleged retaliation. See, e.g., Blomker v. Jewell, 831 F.3d 1051, 1059 (8th Cir. 2016) (quotation omitted); Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 90 (2d Cir. 2015); accord McCleary-Evans, 780 F.3d at 585–88.

An employee cannot plausibly allege a but-for causal connection between protected activity and the employer's adverse action without alleging that the decisionmaker who took the adverse action knew that the employee had engaged in protected activity. See Holland v. Washington Homes, Inc., 487 F.3d 208, 218 (4th Cir. 2007); Hooven-Lewis v. Caldera, 249 F.3d 259, 278 (4th Cir. 2001); Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998); see also Conrad v. CSX Transp., Corp., 824 F.3d 103, 108 (4th Cir. 2016); Gestamp S.C., L.L.C. v. NLRB, 769 F.3d 254, 262 (4th Cir. 2014). Temporal proximity between an employer's knowledge of protected activity and an adverse employment action provides one relevant consideration. See, e.g., Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273–74 (2001) (per curiam); Price v. Thompson, 380 F.3d 209, 213 (4th Cir. 2004) abrogated on other grounds by Nassar, 133 S. Ct. at 2533. Although an allegation that adverse action was taken very shortly after the employer learned of the protected activity typically permits a reasonable inference of causation, "[a] lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action, . . . negates any inference that a causal connection exists between the two." Dowe, 145 F.3d at 657 (three-year lapse between protected activity and adverse employment action is too long to infer causation); see Breeden, 532 U.S. at 274 ("Action taken . . . . 20 months later suggests, by itself, no causality at all."). A plaintiff can rebut this conclusion by plausibly alleging that her employer's actions taken during the intervening period demonstrate

8

retaliatory animus. See Lettieri v. Equant Inc., 478 F.3d 640, 650 (4th Cir. 2007); King v. Rumsfeld, 328 F.3d 145, 151 n.5 (4th Cir. 2003); Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998).

Although Brown's 2011 EEOC charge constituted protected activity under Title VII, and her September 2015 termination constituted a materially adverse action, she fails to plausibly allege any causal connection whatsoever, let alone but-for cause, between her 2011 EEOC charge and her September 2015 termination. First, Brown does not allege that Safa Hamad, who decided to fire Brown, even knew that Brown filed an EEOC charge in 2011. Second, and in any event, the four-year gap between Brown's 2011 EEOC charge and her 2015 termination "negates any inference that a causal connection exists between the two." Dowe, 145 F.3d at 657; see Breeden, 532 U.S. at 274. Furthermore, Brown has not alleged an employer action during the intervening period that could demonstrate retaliatory animus. Her vague, conclusory allegations that on unstated dates unstated persons defamed her, unfairly disciplined her, treated her differently, denied her educational opportunities, and failed to accommodate an unstated disability are insufficient to nudge Brown's claims from possible to plausible. For example, the court would have to speculate whether the acts occurred after she filed her 2011 EEOC charge, whether the persons responsible for the acts knew that Brown had filed a 2011 EEOC charge, and whether those alleged acts demonstrated retaliatory animus. Thus, Brown has failed to plausibly allege a Title VII retaliation claim.[3]

C.

As for Brown's hostile work environment claim, Brown does not specify the conduct upon

---

[3] To the extent Brown alleges that she was fired "the day [she] returned from FMLA leave," retaliation for the exercise of an employee's rights under the FMLA is not protected under Title VII. See 29 U.S.C. §§ 2000e-2, 2000e-3. Moreover, in her complaint, Brown alleges that her 2011 EEOC charge, not her FMLA leave, was the reason she was fired.

9

which she bases her claim. To state a claim that her employer violated Title VII by creating a hostile work environment, an employee must plausibly allege that: (1) she experienced unwelcome harassment; (2) the harassment was based on a protected characteristic under Title VII; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) the harassment is imputable to the employer. See, e.g., EEOC v. Fairbrook Med. Clinic, P.A., 609 F.3d 320, 327 (4th Cir. 2010); Ziskie v. Mineta, 547 F.3d 220, 224 (4th Cir. 2008); Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 331 (4th Cir. 2003) (en banc). An employee must show that her protected characteristic under Title VII was the "but for" cause of the alleged harassment. See, e.g., Gilliam v. S.C. Dep't of Juvenile Justice, 474 F.3d 134, 142 (4th Cir. 2007). "[C]onclusory statements that [an employer] treated [the plaintiff] less favorably than" other employees of "similar rank" who lacked the relevant protected characteristic "cannot support an actionable claim for harassment." Causey, 162 F.3d at 801–02.

To determine whether alleged harassment was sufficiently severe or pervasive to alter the employee's terms and conditions of employment and to create an abusive working environment, the court examines the allegations both subjectively and objectively. See, e.g., Harris v. Forklift Sys., Inc., 510 U.S. 17, 21–22 (1993). First, the employee must subjectively consider the harassment to be sufficiently severe or pervasive as to alter her conditions of employment. See, e.g., Breeden, 532 U.S. at 270–71; Faragher v. City of Boca Raton, 524 U.S. 775, 787–88 (1998); Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 277 (4th Cir. 2015) (en banc). Second, a court views the conduct from the perspective of a reasonable person in the employee's position to determine whether it is objectively severe or pervasive. See, e.g., Breeden, 532 U.S. at 271; Faragher, 524 U.S. at 787–88; Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81–82 (1998); Boyer-Liberto, 786 F.3d at 277.

The objective component helps courts "to police the baseline for hostile environment claims." Mendoza v. Borden, Inc., 195 F.3d 1238, 1244 (11th Cir. 1999) (en banc) (quotation omitted). The court considers the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23. The conduct must be extreme to be actionable. See id.; Faragher, 524 U.S. at 787–88; Boyer-Liberto, 786 F.3d at 277–78. Title VII does not create "a general civility code for the American workplace." Oncale, 523 U.S. at 80. The "conduct must . . . amount to a change in the terms and conditions of employment." Faragher, 524 U.S. at 788; see Boyer-Liberto, 786 F.3d at 277–81. "[D]iscriminatory intimidation, ridicule, and insult" based on the protected characteristic must "permeate[ ]" the work environment in a manner "sufficiently severe or pervasive to alter the conditions" of the plaintiff's employment and to "create an abusive working environment." Harris, 510 U.S. at 21 (quotations omitted). Simple teasing, sporadic rude language, offhand comments, jokes related to a protected status, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment. See White, 548 U.S. at 68–69; Breeden, 532 U.S. at 270–71; Faragher, 524 U.S. at 788; cf. Boyer-Liberto, 786 F.3d at 277–81. Likewise, mere rude or insensitive treatment cannot sustain a hostile work environment claim. See, e.g., Baqir v. Principi, 434 F.3d 733, 746–47 (4th Cir. 2006); see also Breeden, 532 U.S. at 270–71; Faragher, 524 U.S. at 787–88; Oncale, 523 U.S. at 81–82; cf. Boyer-Liberto, 786 F.3d at 277–81; Walker v. Mod–U–Kraf Homes, LLC, 775 F.3d 202, 207–10 (4th Cir. 2014); Freeman v. Dal-Tile Corp., 750 F.3d 413, 420–24 (4th Cir. 2014); Okoli v. City of Balt., 648 F.3d 216, 220–22 (4th Cir. 2011).

Even construing Brown's complaint liberally, Brown's conclusory allegation that she was "forced to work in a hostile work environment" does not nudge her claim over the line from possible

11

to plausible. Even if the court construes her claim to be based on allegations that at unstated times unstated persons defamed her, unjustly disciplined her through "suspensions" and "write-ups," treated her differently than Hispanic coworkers, and gave others work opportunities they did not give her, Brown has failed to state a hostile work environment claim. Brown has not alleged any facts suggesting that these acts were sufficiently severe or pervasive as to alter the conditions of her employment and create an abusive work environment. With no facts concerning these events, the court can only speculate that they were severe or pervasive. Furthermore, except for the threadbare allegation that she was "treated differently" than Hispanic coworkers, which is too vague to state a claim under Title VII, Brown does not allege that any of these acts were motivated because of her color, race, religion, or national origin. Therefore, Brown has failed to plausibly allege a hostile work environment claim.

D.

As for Brown's claim that she was "discriminated against due to [her] Race/Black, Color/Dark-skinned, Religion (Christianity) and National Origin/African," an employer cannot "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Brown has not alleged direct evidence of discriminatory termination and relies on the burden-shifting analysis in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under McDonnell Douglas, a plaintiff may prove a prima facie case of illegal discrimination by showing that: (1) she is a member of a protected class; (2) she was discharged; (3) at the time of her discharge, she was performing her job at a level that met her employer's legitimate expectation; and (4) that similarly situated employees received more favorable treatment. See, e.g., Hill v. Lockhead Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004) (en banc) abrogated on other

12

grounds by Nassar, 133 S. Ct. at 2533; White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004); see also Guessous, 828 F.3d at 216; Miles v. Dell, Inc., 429 F.3d 480, 485–89 (4th Cir. 2005).

If the plaintiff establishes a prima facie case, the burden shifts to the employer to produce evidence that the adverse employment action was "for a legitimate, nondiscriminatory reason." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981). This burden is one of production, not persuasion. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509–11 (1993). If the employer offers admissible evidence sufficient to meet its burden of production, "the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons were not its true reasons, but were a pretext for discrimination." Hill, 354 F.3d at 285 (quotation omitted); see, e.g., Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000); King, 328 F.3d at 150–54. A plaintiff can demonstrate pretext by showing that the employer's "explanation is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of [illegal] discrimination." Mereish v. Walker, 359 F.3d 330, 336 (4th Cir. 2004) (quotation omitted).

To survive a motion to dismiss, a Title VII plaintiff must plausibly allege a statutory claim, although she need not allege a prima facie case under McDonnell Douglas. See, e.g., McCleary-Evans, 780 F.3d at 585–88. To state a Title VII status-based claim, a plaintiff must plausibly allege the requisite causal connection between the plaintiff's protected status and the alleged discrimination. See Guessous, 828 F.3d at 216–17. "For status-based discrimination claims, the employee must 'show that the motive to discriminate was one of the employer's motives, even if the employer also had other, lawful motives that were causative in the employer's decision.'" Id. at 216–17 (quoting Nassar, 133 S. Ct. at 2523).

13

"[N]aked allegations" of a causal connection between the employee's color, race, religion, or national origin and the alleged discrimination do not state a plausible Title VII claim. See McCleary-Evans, 780 F.3d at 585–86 (quotation omitted). For example, in McCleary-Evans, the Fourth Circuit held that a plaintiff failed to state a claim when she alleged that "non-Black decisionmakers hired non-Black applicants instead of the [Black] plaintiff" because they had "predetermined to select for both positions a White male or female candidate." Id. (quotation omitted). Although the allegation was "consistent with discrimination, it [did] not alone support a reasonable inference that the decisionmakers were motivated by bias." Id. at 586 (emphasis in original). In McCleary-Evans, the plaintiff described at length her own qualifications for the job, but she "did not include any allegations regarding the qualifications or suitability of the persons hired." Id. at 583–84. The Fourth Circuit noted that the employer may have hired the non-Black candidates because they were "better qualified, or . . . perform[ed] better during their interviews, or were . . . better suited based on experience and personality for the positions." Id. at 586. Or, the employer might have acted in a discriminatory manner. See id. Without plausible factual allegations of appropriate hiring comparators (i.e. qualifications, interview performance, suitability for the job), the court could only speculate as to why the employer hired the non-Black individuals. Id. To satisfy the causal element of her Title VII claim, a plaintiff must plausibly allege that "the motive to discriminate was one of the employer's motives, even if the employer also had other, lawful motives that were causative in the employer's decision." Nassar, 133 S. Ct. at 2523; see Guessous, 828 F.3d at 216.

Brown's allegations are even less substantial than those in McCleary-Evans. Brown alleges only that she was treated differently than Hispanic coworkers and that she was subject to defamation, unjust discipline, and denied educational opportunities. Like the plaintiff in McCleary-Evans,

Brown alleges facts that are consistent with discrimination but do not alone support a reasonable inference of discrimination. Brown alleges that she was treated differently than Hispanic coworkers, but does not allege how she was treated differently or any facts from which the court could conclude that the Hispanic coworkers were similarly situated. Likewise, Brown alleges that she was denied educational opportunities made available to others, but does not allege that the other employees were similarly situated in terms of their relevant experience or job duties. Brown's allegations that she was defamed and subject to unjust discipline do not by themselves plausibly support a reasonable inference that anyone discriminated against her in violation of Title VII. Notably, Brown does not plausibly allege that a similarly situated comparator was not defamed or not disciplined. See, e.g., McCleary-Evans, 780 F.3d at 852, 584; Taylor v. Va. Union Univ., 193 F.3d 219, 234 (4th Cir. 1999) (en banc), abrogated in part on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003); Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir. 1993); Moore v. City of Charlotte, 754 F.2d 1100, 1105–06 (4th Cir. 1985); Iskander v. Dep't of Navy, 116 F. Supp. 3d 669, 679–80 (E.D.N.C. 2015), aff'd, 625 F. App'x 211 (4th Cir. 2015) (per curiam) (unpublished). Accordingly, Brown has failed to plausibly allege a Title VII discrimination claim.

IV.

In sum, defendants' motion to dismiss [D.E. 17] is GRANTED, and plaintiff's complaint is DISMISSED without prejudice.

SO ORDERED. This 12 day of July 2017.

JAMES C. DEVER III
Chief United States District Judge

15